## PUBLIC OPINION PUB. CO. v. JENSEN, Collector of Internal Revenue.

### No. 9925.

Circuit Court of Appeals, Eighth Circuit.

March 25, 1935.

Rehearing Denied May 8, 1935.

Arnold L. Guesmer, of Minneapolis, Minn., for appellant.

L. W. Post, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to the Atty. Gen., on the brief), for appellee.

Before BOOTH, Circuit Judge, and MUNGER and BELL, District Judges.

BELL, District Judge.

This is an action by appellant for a refund of income taxes paid for the years 1920 and 1921. In its income tax return appellant deducted as operating expenses for 1920 the sum of $15,839.64 and for 1921 the sum of $11,592.59, which sums had been expended by it on newspaper subscription contests. The Commissioner disallowed the deductions and assessed additional taxes accordingly in the amounts of $6,022.16 for 1920 and $1,705.06 for 1921. Appellant appealed to the Board of Tax Appeals, which affirmed the Commissioner's determination. 6 B. T. A. 1255. The deficiencies were paid; claims for refund were filed and rejected. Thereafter this suit was commenced; a jury was waived; the court found' for the ap-

pellee; a judgment was entered; and this appeal taken.

The appellant owned and published the Public Opinion, a daily newspaper, at Watertown, S. D. In 1920 it conducted a subscription contest at a cost of $15,839.64 and in 1921 another at a cost of $11,592.59. Before these contests appellant had 5,214 subscriptions. It obtained 2,886 subscriptions in the first contest and 2,110 in the second. Some of these subscriptions were renewals, and during the contests there were expirations, so that at the end of the last contest appellant had a circulation of 7,215, which was a net gain of 2,001.

It appears that the publication of the Daily News, another daily newspaper, was commenced in Watertown in 1918, and that in 1919 it inaugurated contests and conducted a vigorous campaign for subscriptions, and that it increased its circulation to approximately 4,000 by April, 1920.

Watertown, where these newspapers circulated, had a population of approximately 10,000, and was situated in an agricultural territory. There was evidence on behalf of the appellant that its circulation of 5,214 properly served the territory as a news and advertising medium; that it would not have been good business policy before the advent of the Daily News to undertake to increase its circulation; that the territory properly could support only one daily newspaper; that, when its competitor entered the field and by means of contests and political agitation acquired a circulation of 4,000 in a comparatively short time, it became imperative for appellant to engage in similar contests to retain its circulation, prestige, and good will as a newspaper; that this was the sole purpose of expending the sum of $27,432.23 on the contests; and that the expenditures were not made to build a larger circulation.

The circulation campaigns were conducted in a similar manner by both papers. Professional managers and solicitors were employed, prizes offered, and contests promoted. Subscriptions, paid in advance, new or renewal, from six months to three years, were solicited. In each instance the contests covered a period of several months.

The Revenue Act of 1918, c. 18, 40 Stat. 1057, 1077, is applicable to the income for 1920, and the Revenue Act of 1921, c. 136, 42 Stat. 227, 254, is applicable to the income for 1921. The provision involved is the same in both acts, and is as follows:

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity. * * *"

The question presented is whether the expenditures by appellant in conducting the subscription contests in 1920 and 1921 were capital expenditures or constituted ordinary and necessary expenses of doing business. The appellant contends that the expenditures were made for the purpose of defending and maintaining its existing circulation against encroachment by an active competitor, and therefore were deductible as ordinary and necessary expenses of doing business. The appellee contends that the expenditures were for the purpose of increasing the circulation and therefore were capital expenditures. The court below in its findings of fact decided in favor of the contention of the appellee. The deductions were disallowed by the Commissioner. The assessment of a Commissioner of Internal Revenue is prima facie correct, and the burden is on the taxpayer to overcome the presumption of its correctness. J. C. Blair Co. v. Commissioner of Internal Revenue (C. C. A.) 34 F. (2d) 861.

The trial court found that the expenditures involved "represented expense incurred and made by the plaintiff in conducting subscription contests for the purpose of increasing its subscription to its said newspaper; that prior to the said two contests so conducted by the plaintiff the circulation of said newspaper was 5,214, and that after the said two contests the subscription was 7,215 and that said expenditures were made for the sole purpose of building circulation; and that the tax payer by said subscription campaigns purchased an addition to its circulation structure, and that its earning capacity was increased thereby." There is substantial evidence to sustain this finding. That this court will not disturb a finding of fact made by a lower court in an action at law, if there is substantial evidence to sustain it, is elementary. Brown

Shoe Co. v. Carns (C .C. A.) 65 F.(2d) 294; Ætna Casualty & Surety Co. v. Reliable Auto Tire Co. (C. C. A.) 58 F.(2d) 100; Kingston v. American Car & Foundry Co. (C. C. A.) 55 F.(2d) 132; Exchange Trust Co. v. Capitol Life Insurance Co. (C. C. A.) 49 F.(2d) 133.

■ The circulation of a publication is a capital asset, and money expended in increasing it is a "capital expenditure" and is not deductible in determining the publisher's taxable income. Meredith Publishing Co. v. Commissioner of Internal Revenue (C. C. A.) 64 F.(2d) 890, 891, certiorari denied, 290 U. S. 646, 54 S. Ct. 64, 78 L. Ed. 560; Strong Publishing Co. v. Commissioner (C. C. A.) 56 F.(2d) 550; News Publishing Co. v. Blair, Commissioner, 58 App. D. C. 295, 29 F.(2d) 955. In the Meredith Case this court said:

"That the circulation of a magazine or newspaper is an intangible capital asset does not admit of doubt. The Commissioner of Internal Revenue has consistently so held from his first consideration of the question, and his holding has been upheld and approved by the courts. Danville Press, Inc., 1 B. T. A. 1171; Gardner Printing Co., 4 B. T. A. 37; Herald-Despatch Co., 4 B. T. A. 1096; Walter S. Dickey, 14 B. T. A. 1295; Tulsa Tribune Co., 21 B. T. A. 1405; Public Opinion Publishing Co., 6 B. T. A. 1255; Commercial Nat. Ins. Co., 12 B. T. A. 655, 657; News Publishing Co. v. Blair, 58 App. D. C. 295, 29 F.(2d) 955; Strong Publishing Co. v. Commissioner (C. C. A. 7) 56 F.(2d) 550.

"And it must follow that money expended in building up this circulation structure is a capital expenditure, and not the ordinary and necessary expense incurred in carrying on a trade or business, under the provisions of section 234 (a) (1) of the Revenue Act of 1921 (42 Stat. 254). Such expenditure under said section 234 to be deductible must be in the nature of upkeep— not of investment (Duffy v. Central R. R. Co. of New Jersey, 268 U. S. 55, 63, 45 S. Ct. 429, 69 L. Ed. 846); and must be both ordinary and necessary in the conduct of a business or trade (Robinson v. Commissioner (C. C. A. 8) 53 F.(2d) 810, 79 A. L. R. 975; Lloyd v. Commissioner (C. C. A. 7) 55 F.(2d) 842, 843)."

■ It is evident from the record that the competition of the News was a strong inducement for appellant to make the expenditures. According to appellant's argument, it believed that not only its future success but even its existence depended on holding and getting subscriptions. The purpose of the contests by both newspapers was to obtain subscriptions, to increase circulation. The expenditures by appellant resulted in a substantial increase in its circulation. The News went into bankruptcy and out of business. The cost of eliminating competition is a capital asset. Newspaper Printing Co. v. Commissioner of Internal Revenue (C. C. A.) 56 F.(2d) 125.

Appellant proposes a plan for the allocation of a portion of the expenditures to capital and the balance to expenses deductible from gross income, but the evidence does not justify or permit such action. Moreover, the court below held: "That the whole of said expenditures for said 1920 and 1921 contests represented capital expenditures and that said items were not deductible as ordinary necessary expenses from its taxable income for the years 1920 and 1921 respectively." As there is substantial evidence to sustain this finding, it will not be disturbed.

■ In numerous assignments counsel for appellant directs attention to alleged error in the exclusion of testimony. The questions to which objections were sustained called for conclusions, opinions, or for cumulative testimony; and there was no reversible error in excluding it.

We are of the opinion that the expenditures in question were not ordinary and necessary expenses incurred in the operation of the business, but were extraordinary expenses made to purchase an intangible capital asset. Therefore the judgment is affirmed.