[Sac. No. 4910. In Bank.—August 31, 1936.]

CORPORATION OF AMERICA (a Corporation) et al., Plaintiffs and Appellants, v. CHARLES G. JOHNSON, as State Treasurer, etc., Defendant and Appellant.

Louis Ferrari, J. A. Cereghino, O'Melveny, Tuller & Myers and Louis W. Myers for Plaintiffs and Appellants.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Defendant and Appellant.

CURTIS, J.—This action was instituted by the three plaintiffs named therein to collect from the defendant as treasurer of the state, taxes paid under protest which the plaintiffs claim were illegally collected.

The three plaintiffs are corporations organized under the laws of this state, and during all of the times mentioned herein, the plaintiff Corporation of America was doing business in this state, and during all the times mentioned herein since the first day of November, 1930, the plaintiff Bankamerica Company was doing business in this state, and during all of said times since the twenty-eighth day of July, 1930, the plaintiff Associated American Distributors (Inc.) was doing business in this state. Said last-named plaintiff was organized on the fifth day of May, 1930, under the name of the Intercoast Sales Corporation, but on the twenty-ninth day of March, 1932, it changed its name to the Associated American Distributors (Inc.)

The original claim of the plaintiff Corporation of America was made up of three separate items as follows:

(1) $30,251.02, which said plaintiff contends it was illegally compelled to pay under ''Dividends received from foreign corporations, resulting from business done'' in this state;

(2) $12,690.55, which it was illegally compelled to pay by reason of the tax commissioner's refusal to permit it to deduct from its taxable income federal income taxes which it alleges had accrued during the year covered by its tax return; and

(3) $25,425.48, which it alleges it was compelled to pay to defendant by reason of the tax commissioner's computation of its ''Income earned during the year of organization [by

its two affiliated corporations] forming basis for tax for succeeding year''.

The claims of the other two plaintiffs are for $726.20 and $190.46, respectively, and are based upon the alleged erroneous computation by the tax commissioner of their ''Income earned during the year of organization, forming the basis for tax for succeeding year''. As the basis of these claims is the same as that upon which claim (3) of the Corporation of America is predicated, whatever discussion concerning this latter claim is made in this opinion will be applicable to the claims of these two plaintiffs, and will be decisive of their validity without any specific reference to either of them. The first two claims of the plaintiff are all based upon alleged overpayments of taxes for the taxable year ending December 31, 1930, the last upon an alleged overpayment for the year 1931.

The trial of this action before the superior court resulted in a judgment in favor of the plaintiff Corporation of America on its claim for $30,251.02 and in favor of the defendant as to all of the other claims of each of the three plaintiffs. The defendant has appealed from the judgment in favor of the plaintiff Corporation of America on its claim for $30,251.02, and the three plaintiffs have appealed from the judgment disallowing their respective claims. The two appeals have been consolidated and are before us upon a single record. Whenever we refer to the plaintiff without designating which of the three plaintiffs is meant, the reference will be considered as made to the Corporation of America.

■ We will first consider the appeal of the defendant against the judgment in favor of the Corporation of America upon its claim of $30,251.02. The Corporation of America, a California corporation, is the owner of all the capital stock of the Bankitaly Company of America, a Delaware corporation. The Bankitaly Company, during the taxable year 1930, was the owner of capital stock in various corporations transacting business in the state of California, and during that year received the sum of $756,275.40 as income derived from said corporations from business transacted entirely within the state of California. The tax on this income of $756,275.40 would amount to the sum of $30,251.02. The Corporation of America claimed before both the tax com-

missioner and at the trial of this action in the superior court, and now claims, that dividends received by it from the Bankitaly Company, which latter company had in turn received said dividends from corporations doing business in California on business transacted in this state were exempt from taxation under the provisions of section 8 (h) of the Bank and Corporation Franchise Tax Act of this state. (3 Deering's Gen. Laws, p. 4767; Stats. 1929, p. 19.) This section so far as is necessary for our present purpose, and as it read prior to its amendment in 1933, is as follows: "In computing 'net income' the following deductions shall be allowed: Dividends received during the taxable year from income arising out of business done in this state, but if the income out of which the dividends are declared is derived from business done within and without this state, then so much of the dividends shall be allowed as a deduction as the amount of the income from business done within this state bears to the total business done. The burden shall be on the taxpayer to show that the amount of dividends claimed as a deduction has been received from income arising out of business done in this state."

The defendant contends that this section of the act applied only to corporations doing business in this state who in turn owned stock on which they received dividends from corporations doing business in this state. He points out that the Corporation of America, while it is a California corporation and does business in this state, owns no stock in the California corporations doing business in this state which earned said dividends in the first instance. The only stock owned by it was stock in the Bankitaly Company, a corporation organized in the state of Delaware, which did no business in this state during the taxable year 1930. While the plaintiff, Corporation of America, did not directly receive any dividends from corporations doing business in this state, it did through its ownership of the stock of the Bankitaly Company at least indirectly receive the dividends paid to the Bankitaly Company on its stock in California computed on business done in this state. The result is the same, in so far as the net income of the plaintiff, Corporation of America, is concerned. The tax on the income so received by the Corporation of America had already been paid by the California corporations earning the same. ▊ To require

the Corporation of America to again pay this tax would be double taxation which the act as then in force clearly intended to avoid. The fact that this income was received through one or more intermediary corporations, some of which may have been foreign corporations, did not in any manner change the situation. The whole question was governed by the terms of section 8 (h) which were clear and unambiguous. This section as it then read made no requirement that the dividends which might be deducted must have arisen out of business done in this state by the corporation which paid said dividends. On the other hand, it expressly provided that dividends arising from business done in this state might be deducted when computing the net income of the corporation receiving such dividends. This language is all-inclusive, and included all such dividends. In construing a statute, the duty of the court is simply to ascertain its meaning and not to insert therein anything that may have been omitted therefrom. (Sec. 1858, Code Civ. Proc.)

In 1933, this section of the act was amended and in its amended form it provided that section 8 (h) should not apply to dividends received from corporations not taxable under article XIII of the state Constitution. (Stats. 1933, pp. 687, 689.) Under this section as it now reads, dividends received from a foreign corporation which does no business in this state would in all probability not be deductible. The rule was different, as we have seen, during the taxable year, 1930, when the plaintiff received said dividends from the Bankitaly Company, which it claimed the right to deduct in computing its net income during said year.

Defendant complains that in this present action the evidence shows that even the Bankitaly Company did not receive all of the dividends for which deductions are claimed from corporations doing business in this state, but that at least a portion of said dividends was paid to the Bankitaly Company by a corporation that did no business in this state but which owned stock in other corporations which did business in this state, and that these latter corporations paid the tax, and that the corporation in which the Bankitaly was a stockholder did not actually pay the tax or any part of it. While the corporation in which the Bankitaly Company was a stockholder did not directly pay said tax it did so indirectly through the California corporations

in which it was a stockholder. ■ Defendant complains that to compel the state to follow these dividends through the various corporations casts an unreasonable burden upon the officials having the responsibility of collecting the taxes of the state, which in many cases is difficult, and in others impossible of performance. This burden however, is not cast upon the state officials, as the act expressly makes it the duty of the taxpayer to show that the amount of dividends claimed as a deduction has been received from income arising out of business done in this state. This is the only question raised by the defendant on his appeal from that part of said judgment in favor of the plaintiff, the Corporation of America. In our opinion the appeal is lacking in merit for the reasons herein stated.

■ We now pass to the appeal of the plaintiff. It involves two major questions. We will first consider the item of $12,690.55, which plaintiff claims as a deduction and which the trial court refused to allow. For the taxable year 1930, the plaintiff claimed a deduction in the sum of $317,615.14, as taxes which accrued during that year under the Revenue Act of 1928 (45 U. S. Stats., p. 791), otherwise known as the Federal Income Tax Act. No part of this sum, however, was ever paid by the plaintiff, by reason of the fact that the plaintiff for the taxable year 1930 availed itself of the privilege, given to corporations with affiliated connections, of making a joint or consolidated return to the federal government of their taxable incomes. This return showed losses by the affiliated corporations at least equal to the net income of the plaintiff. Under the federal statute, as then in force, in view of the facts shown by said joint return, the plaintiff was not liable for any tax upon its individual net income, and accordingly it paid no tax whatever to the federal government on its income for that year. Nevertheless the plaintiff contends that it was entitled to deduct, in computing the tax due the state for that year, the entire amount of $317,615.14 which it claims accrued during that year, even though it did not pay any part thereof. This contention is based upon section 8 (c) of the Bank and Corporation Franchise Tax Act which, before its amendment in 1933 (Stats. 1933, p. 687), permitted deductions to be made in computing the net income of "(c) Taxes or licenses paid or accrued during the taxable year, other than

taxes paid under this act or under subdivision (d) of section 14, article XIII of the Constitution of this state . . . provided, further, that the deduction allowed for federal income taxes shall be the amount of such taxes accrued during the taxable year.'' (Stats. 1929, pp. 19, 21.) Let us assume that this section of the act when in force provided that all federal taxes which accrued during a taxable year might be deducted from the net income of a bank or corporation doing business in this state for the purpose of computing its taxable or net income for that year. Under this construction of said section, which is the construction contended for it by the plaintiff, had the plaintiff been doing business during said year on its individual account, and not in conjunction with any affiliated corporation, it would have been permitted to deduct the amount of its federal income tax for that year from its income for the purpose of computing its net income for that year. Of course, under those circumstances it would have been required to actually pay the amount of its income tax to the federal government. However, under the provisions of the federal statutes then in force which permitted plaintiff with its affiliated corporations to file a consolidated return, the income tax of these several affiliated corporations was computed as one tax and that tax was based upon the net income of the entire group of corporations. The combined losses of those that had done business at a loss during the year were deducted from the income of the other corporate members and the difference constituted the amount, or net income upon which the federal income tax would be computed. No separate income tax was computed upon the individual net income of any of these affiliated corporations, and therefore no tax accrued during that year against any of them. The last statement is subject to one exception and that is after the joint tax is ascertained each corporation is assessed for its proportion of the joint tax, as provided by section 142 (b) of the Federal Income Tax Act. (45 U. S. Stats., pp. 791, 832.) In case the consolidated return shows no joint tax assessable, as did the return of plaintiff and its associates for the year 1930, then no tax whatever accrued that year against plaintiff or any of its associates. While plaintiff had a net income of considerable proportion for the year 1930, no tax accrued as against the plaintiff upon said net income for the reason, as just stated, that the

only tax for which the plaintiff or any of its affiliated corporations were compelled to pay and the only tax that accrued during that year, was a tax upon the net income of the consolidated corporations. Section 141 (a) of the Revenue Act of 1928 in force during the taxable year 1930 provided for the filing of consolidated returns by affiliated corporations. Section 142 (b) of the same act provided for the computation of the tax upon the filing of a consolidated return, as follows: "In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or in the absence of any such agreement, then on the basis of the net income properly assignable to each." (45 U. S. Stats., pp. 791, 831, 832.) As no federal income taxes accrued on plaintiff's net income for the taxable year 1930, it was not entitled to deduct from its income received during that year any sum whatever as federal income taxes in computing its net income for that year under the Bank and Corporation Franchise Tax Act of this state.

Plaintiff's contention that the federal income taxes for the year 1930 accrued as against its net income and that this tax was paid by the losses of its affiliated corporations cannot, we think, be sustained. As we have stated, the only taxes assessable against a corporation filing a consolidated return with its affiliated corporations, are those which are assessed against the net income of the consolidated companies. The losses of the members of the affiliated group of corporations are offset against the gains of the other. But the taxes due from the latter are not offset by the losses of the former for there is no known means of computing the amount of taxes to be computed on a net loss of income. If one of two affiliated corporations had a net income of $100,000, the statute fixes the amount of taxes to be paid on an income in that amount. But if the other of these two affiliated corporations sustained a loss of $100,000, there is no way under the law of computing the loss in taxes on such. an income. Therefore it cannot be claimed that in determining the taxes due from said affiliated corporations, the loss in taxes from the one is to be deducted or offset from taxes

on the net income of the other, nor can it be said that the taxes due from the latter are paid by the losses sustained by the former. On the other hand, the only method of ascertaining the amount of taxes due from these affiliated corporations is to take the losses sustained by the one from the net income of the other and compute the taxes on the difference. As the losses of one equal the net income of the other, there are no taxes assessed against either. No taxes accrue against the corporation showing a net income, and therefore no such taxes are paid by the losses of the other of these two corporations. The judgment of the trial court denying the right of the plaintiff to recover said sum of $12,690.55 must be sustained.

The trial court, as we have seen, also disallowed the item of $25,425.48, which the plaintiff alleges it was compelled to pay illegally by reason of the tax commissioner's computation of ''Income earned during the year of its organization forming the basis for tax for succeeding year'' of two of its affiliated corporations.

In accordance with the provisions of the Bank and Corporation Franchise Tax Act of this state as then in force, the plaintiff filed a consolidated return of its income for the year 1930. Included in said return was the income of two affiliated corporations, the Bankamerica Company and the American Brokerage, Inc. The Bankamerica Company was organized and commenced doing business in this state on November 1, 1930, and the American Brokerage, Inc., was organized and began doing business October 31, 1930. The plaintiff paid the taxes for the year 1930, upon the net income of these two affiliated corporations, for the two months of 1930 during which they transacted business. There is no dispute as to the amount of these taxes. The present controversy involves the taxes for the year 1931. Plaintiff contends that it should pay the same amount of taxes for doing business during the entire year of 1931, as it paid for the privilege of doing business for the two months of 1930. Instead of adopting plaintiff's theory, the trial court computed the income of the Bankamerica Company and the American Brokerage, Inc., on an annual basis using the two months of 1930 in which they did business as the basis on which to compute their taxes for the entire year of 1931. The difference in the amount of

taxes computed under these two methods of computation amounted to the sum of $25,425.48, the amount of item (3) which the trial court disallowed plaintiffs on the trial of this action. The precise situation was recently before this court in the case of *Filoli, Inc.*, v. *Johnson*, 4 Cal. (2d) 662 [51 Pac. (2d) 1093], in which we sustained the method of computation approved by the trial court in this case. All the questions raised by the plaintiff in this action as to the correct method of computing taxes for the second year (1931) were decided adversely to plaintiffs' present contention. We are satisfied with the conclusion reached upon these questions in our former opinion, and a further discussion of them would not serve any useful purpose.

While the Filoli case presented all of the questions that are involved in the present appeal, the plaintiff now raises one question which it seems was not called to the attention of the court or determined in the former case. This question we will now proceed to consider.

The third paragraph of section 13 of the Bank and Corporation Franchise Tax Act, enacted in 1929, was amended in 1931. (Stats. 1929, p. 19; Stats. 1931, p. 64.) The original paragraph provided for the method of computing the tax on a bank or corporation which commences to do business in this state "after the effective date of this act". This paragraph was amended in 1931 by the reenactment of the original paragraph in its entirety, and by an additional provision explanatory of the original paragraph. The contention of the plaintiff is that as the amended paragraph of the section mentions only banks and corporations which commenced to do business in this state "after the effective date of this act", the words, "this act" refer to the amendatory statute of 1931, instead of the original statute of 1929, and as the two affiliated corporations, the Bankamerica Company and the American Brokerage, Inc., each commenced to do business in this state in 1930, and before the effective date of the amendatory statute, the statute as amended has no application to these two corporations. We cannot agree with this contention. Section 325 of the Political Code states the rule applicable in such cases as follows: "Where a section or part of a statute is amended, it is not to be considered as having been repealed and re-enacted in the amended form; but the portions which are not altered are to be

considered as having been the law from the time when they were enacted, and the new provisions are to be considered as having been enacted at the time of the amendment." (See, also, 23 Cal. Jur. 699; *Carter* v. *Stevens,* 208 Cal. 649 [284 Pac. 217]; *Blodgett* v. *Superior Court,* 210 Cal. 1 [290 Pac. 293, 72 A. L. R. 482]; 25 Ruling Case Law, p. 907.) It is manifest from these authorities that the words, "this act" which were used both in the original and in the amended statute are to be construed as referring to the original act, and that each of the two affiliated corporations included in the return of the plaintiff for the year 1931, having been organized after the effective date of said act, was subject to and controlled by its provisions.

From the foregoing discussion but one conclusion can be drawn and that is that, in so far as the trial court determined the rights of the plaintiff, Corporation of America, to recover the taxes paid by it under protest, the judgment of said court in favor of plaintiff as to the item of $30,251.02 and against plaintiff as to the two items of $12,690.55 and $25,425.48 must be sustained. As to the claims of the two other plaintiffs, they are based upon alleged overpayment of taxes for the year 1931 upon the basis of income earned during the fractional portion of the year 1930, the year in which they each commenced doing business in this state. Their claims, following our ruling in the case of *Filoli* v. *Johnson, supra,* must be denied.

The judgment of the trial court is affirmed; neither party to pay costs incurred on appeal.

Waste, C. J., Shenk, J., and Seawell, J., concurred.