**KINNEY SHOE CORPORATION,**
**Petitioner and Appellant,**

v.

**STATE of North Dakota, By and Through**
**its Tax Commissioner, Bob HANSON,**
**Respondent and Appellee.**

Civ. No. 950420.

Supreme Court of North Dakota.

Sept. 3, 1996.

William P. Pearce (argued), of Pearce & Durick, Bismarck, and Michael Bray (no appearance), New York City, for petitioner and appellant.

Robert W. Wirtz (argued), Special Assistant Attorney General, Tax Department, Bismarck, for respondent and appellee.

MESCHKE, Justice.

Kinney Shoe Corporation, a wholly owned subsidiary of F.W. Woolworth Company, appealed from a judgment affirming a decision by the State Tax Commissioner assessing additional state income tax against Kinney for the years ending on January 31, 1982 through January 31, 1986. We hold that, to compute Kinney's state income tax, its statutory deduction for federal income taxes is its proportionate share of the federal tax actually paid by Woolworth. We affirm.

Kinney is a New York corporation doing business in North Dakota. Woolworth and its subsidiaries, including Kinney, agreed to consolidate their federal income tax liability under 42 U.S.C.A. 1501 *et seq.* and U.S. Treas. Reg. 1.1502–33(d)(2) and 1.1552–1(a)(2). Under the agreement, Woolworth's subsidiaries, including Kinney, directly paid Woolworth an amount equal to each subsidiary's federal tax liability as if they had filed separate federal returns. After offsetting profits and losses from its subsidiaries, Woolworth filed a consolidated federal tax return. The effect of the offsets from Woolworth's loss subsidiaries reduced the Woolworth group's combined tax liability on its consolidated federal tax return and, because of the adjustments attributable to the loss subsidiaries, the total payments received by Woolworth from its profit subsidiaries exceeded the Woolworth group's consolidated federal tax liability for the contested tax years.

For the contested tax years, Kinney was a profit subsidiary. For its North Dakota tax, Kinney filed separate state returns based on "pro forma" federal returns. Kinney computed its deduction for federal income taxes on a separate company basis as if it had filed a separate federal return. Under that method, Kinney claimed a state deduction for federal taxes in the amount it paid directly to Woolworth.

The Commissioner assessed additional state income taxes against Kinney, construing NDCC 57–38–01.3(1)(c) to authorize a federal tax deduction only for Kinney's proportionate share of the Woolworth group's consolidated tax liability actually paid by Woolworth to the federal government, and not for the amount paid by Kinney to Woolworth. Kinney contested the Commissioner's assessment. The parties stipulated to the facts, and submitted the dispute to an administrative hearing officer, who accepted the Commissioner's interpretation of NDCC 57–38–01.3(1)(c). The Commissioner adopted the hearing officer's recommendation, and

the district court affirmed the Commissioner's decision. Kinney appealed.

■ The Commissioner's interpretation of a statute is fully reviewable by this court. *Northern X–Ray Co., Inc. v. State*, 542 N.W.2d 733 (N.D.1996). In construing a statute, our duty is to ascertain the intent of the Legislature. *Id.* We look first to the words of the statute to discern legislative intent, and we construe those words in their ordinary sense. *Id.* Still, when the Commissioner interprets a statute on a complex and technical subject, the Commissioner's interpretation is entitled to appreciable deference if it does not contradict the language of the statute, or if it is not arbitrary and unjust. *NL Industries v. State Tax Commissioner*, 498 N.W.2d 141 (N.D.1993). We review the Commissioner's interpretation of NDCC 57–38–01.3(1)(c) within that framework.

■ Under North Dakota law, federal taxable income is the simplified starting point for computing state taxable income. NDCC 57–38–01(8); *International Minerals and Chem. Corp. v. Heitkamp*, 417 N.W.2d 791 (N.D.1987). NDCC 57–38–01.3 outlines certain statutory adjustments to federal taxable income for corporations, including a deduction for federal income taxes. For the contested tax years, NDCC 57–38–01.3(1)(c) said:

"1. The taxable income of a corporation ... shall be:

\* \* \* \* \* \*

"c. Reduced by the amount of federal income taxes, paid or accrued as the case may be during the applicable tax year, adjusted by any federal income tax refunds, to the extent that such taxes were paid or accrued upon income which becomes a part of the North Dakota taxable income."

The Commissioner has consistently construed "federal income taxes, paid or accrued" by a subsidiary corporation to mean the subsidiary's proportionate share of the federal taxes actually paid by the parent corporation.

The Commissioner's interpretation of this complex and technical subject does not contradict the language of NDCC 57–38–01.3(1)(c), and it is entitled to appreciable deference. *NL Industries.* Under the Commissioner's interpretation, intercompany transfers that may reduce federal tax liability for a consolidated group do not constitute "federal income taxes, paid or accrued" to compute a subsidiary's state tax deduction. Instead, to meet the requirement for a subsidiary's deduction for "federal income taxes, paid or accrued," the money actually must be paid by the parent corporation to the federal government.

In analogous situations, a majority of courts have construed statutory language similar to NDCC 57–38–01.3(1)(c) to allow a deduction only for the proportionate share of taxes actually paid to the federal government, not the amount of the intercompany transfer. *Buick Motor Co. v. City of Milwaukee*, 48 F.2d 801 (7th Cir.1931); *State v. Western Grain Co.*, 55 Ala.App. 690, 318 So.2d 719 (1975); *Standard Oil Co. v. State*, 55 Ala.App. 103, 313 So.2d 532 (1975); *Arizona Dept. of Revenue v. Transamerica Title Ins. Co.*, 124 Ariz. 417, 604 P.2d 1128 (1979); *Corporation of Am. v. Johnson*, 7 Cal.2d 295, 60 P.2d 417 (1936); *Internorth, Inc. v. Iowa State Bd. of Tax Review*, 333 N.W.2d 471 (Ia.1983); *Trunkline Gas Co. v. Collector of Revenue*, 182 So.2d 674 (La.App.1965); *Northern Natural Gas Co. v. Comm'r of Revenue*, 312 Minn. 177, 251 N.W.2d 125 (1977); *Mid–America Television Co. v. State Tax Comm'n*, 652 S.W.2d 674 (Mo.1983); *Armco Steel Corp. v. State Tax Comm'n*, 580 S.W.2d 242 (Mo.1979); *Continental Tel. Co. of Utah v. State Tax Comm'n of Utah*, 539 P.2d 447 (Utah 1975). The Commissioner's interpretation of NDCC 57–38–01.3(1)(c) follows the one approved by an overwhelming majority of the courts that have considered this subject.

The only contrary decision is *Cities Serv. Gas Co. v. McDonald*, 204 Kan. 705, 466 P.2d 277 (1970), where the Kansas Supreme Court held that a subsidiary corporation was entitled to claim a state deduction for federal income taxes based on the amount the subsidiary paid to its parent corporation. The

*McDonald* court distinguished a case following the majority view, *Trunkline*, on the ground that the Kansas director of revenue had not promulgated an administrative regulation defining the extent of a subsidiary's state deduction.

We have held, however, the Commissioner is not estopped from assessing a tax on the basis of a failure to adopt a pertinent regulation, or to previously collect a tax. *Koch Oil Co. v. Hanson*, 536 N.W.2d 702 (N.D.1995). Here, at least since a 1977 state district court decision, *Red Owl Stores, Inc. v. Dorgan*, No. 25316 (N.D.Dist.Ct. 4th Jud. Dist., Nov. 14, 1977), the Commissioner has construed a subsidiary corporation's state deduction for "federal income taxes, paid or accrued," to mean the subsidiary's proportionate share of the federal taxes actually paid by the parent corporation.

Kinney asserts the Commissioner's longstanding interpretation impermissibly uses inconsistent bases for computing state taxable income and the deduction for federal taxes, in violation of our decision in *Minnesota Mining & Mfg. Co. v. Conrad*, 418 N.W.2d 276 (N.D.1987), that, Kinney claims, effectively overruled *Red Owl*.

■ In *Minnesota Mining*, we held that the Commissioner's use of a worldwide unitary taxation method to compute a multinational corporate taxpayer's federal deduction for state income tax purposes improperly mixed worldwide combined income with a deduction for federal taxes paid on income from the United States. The Commissioner required the taxpayer to file its corporate income tax returns on a combined worldwide unitary basis.[1] However, in computing the taxpayer's deduction for federal taxes, the Commissioner only apportioned, on a worldwide basis, the federal tax paid by the taxpayer on its United States income, thereby resulting in a smaller state deduction for federal taxes. We said the Commissioner's methodology effectively expanded the taxpayer's income base from its United States income to its combined worldwide income, while compressing the taxpayer's deduction to federal taxes paid on income from the United States. We concluded that the Commissioner's methodology impermissibly mixed incompatible concepts for computing taxable income and the deduction for federal taxes.

Kinney argues "[i]t is inconsistent and incompatible to compute North Dakota taxable income on a separate company basis, but then to allow a federal income tax deduction computed only on the basis of the consolidated federal income tax paid by the group." Kinney claims the Commissioner's "methodology does not allow Kinney any benefit from the losses of the group but at the same time penalizes Kinney for the fact that the losses do reduce the consolidated federal tax. The Commissioner seeks to have the best of both worlds and allow the taxpayer the best of neither."

■ Kinney's argument ignores that the ordinary meaning of "federal income taxes, paid or accrued" is the amount of federal taxes actually paid to the federal government. Kinney did not receive any benefit from operating losses that reduced Woolworth's consolidated federal taxable income, because Kinney filed separate state returns and had no losses. *See* NDCC 57–38–14 [allocation of corporate income in special cases]; 57–38–32 [duty of corporations to make returns]. Any claimed differences in the bases for computing state taxable income and the deduction for federal taxes result from Kinney's filing status. *Cf. International Minerals* [rejecting taxpayer's due process argument where taxpayer elected to receive benefit of federal law and sought relief from election for state tax purposes]. We agree with the Commissioner that "Kinney is really suggesting that it be allowed to file retroactively on a combined unitary basis without establishing that it is a part of a . . . unitary group." We are not persuaded that the Commissioner's interpretation of NDCC 57–38–01.3(1)(c) impermissibly mixes mutually incompatible bases for computing state tax-

1. A unitary business group is a group of functionally integrated corporate units that are so interrelated and interdependent that it is impossible to determine the net state taxable income from a particular corporation's activities within the state. *See True v. Heitkamp*, 470 N.W.2d 582 (N.D.1991).

able income and the deduction for federal taxes.

■ Kinney also claims the Commissioner's interpretation of NDCC 57–38–01.3(1)(c) discriminates against taxpayers who do not file combined state tax reports. We disagree. Precedents elsewhere reject this argument.

The same claim was rejected by the Alabama Court of Appeals in *Western Grain*, 318 So.2d at 722:

> We are unable to perceive any discrimination. Every foreign corporation earning income in Alabama is taxed the same—upon taxable income after deduction of federal income taxes paid or accrued. The decision to join in a consolidated return for federal income taxes or file a separate return is that of the taxpayer. Filing a consolidated return is a privilege and results in a consolidated tax liability. 26 U.S.C.A. § 1501. If it benefits in relief from federal taxes it may cost in the amount of deductions permitted by the State. Such results in a penalty by choice of the taxpayer. It is not discrimination by the State.

The Iowa Supreme Court similarly explained in *Internorth*, 333 N.W.2d at 477:

> Plaintiffs are trying, understandably, to have the best of both worlds. They seek to reduce federal tax liability by filing a consolidated return. At the same time, they seek to reduce state tax liability as if they had filed separate federal returns showing a greater federal tax liability. Section 422.35(4) does not allow them to have both advantages. Having only paid or accrued the federal tax liability shown on the federal returns, their state deduction must be computed on that amount.

Here, Kinney has not demonstrated that the Commissioner's methodology discriminates against taxpayers who do not file combined state tax returns. *See NL Industries* [holding that Commissioner's methodology for treating net operating losses did not violate

equal protection].[2] The Commissioner's methodology treats taxpayers situated similarly to Kinney alike.

■ Kinney argues its methodology for computing the federal income tax deduction is required by the federal tax law that is incorporated into and made a part of North Dakota law, and the Commissioner's interpretation of NDCC 57–38–01.3(1)(c) contradicts that federal law. We disagree.

■ Although our statutes use federal taxable income as the simplified starting point for calculating state income tax, federal tax law does not dictate the interpretation of state statutory adjustments thereafter made to that taxable income. *See Armco Steel; Northern Natural Gas*. A tax deduction is a matter of legislative grace and may only be taken if specifically authorized by statute. *NL Industries*. We agree with the Commissioner and the majority of courts that have considered the issue that, in this context the ordinary meaning of the phrase, "federal income taxes, paid or accrued," is a subsidiary's proportionate share of federal taxes actually paid by the parent corporation. We reject Kinney's argument that federal tax law controls the extent of its state deduction for federal income tax.

We conclude that the Commissioner's long-standing interpretation of NDCC 57–38–01.3(1)(c) is not arbitrary and unjust and does not contradict the plain and ordinary meaning of that statute. We defer to the Commissioner's longstanding administrative interpretation of a statute on a complex and technical subject, *NL Industries*, and we follow the overwhelming majority of courts construing statutory language similar to NDCC 57–38–01.3(1)(c). We hold that Kinney's state deduction for "federal income taxes, paid or accrued" under NDCC 57–38–01.3(1)(c) is its proportionate share of the federal tax actually paid by Woolworth.

We affirm the district court judgment.

**2.** Although Kinney tangentially suggests the Commissioner's methodology denies it equal protection, Kinney has not marshalled an equal protection challenge to the Commissioner's interpretation of NDCC 57–38–01.3(1)(c). We have said

that a party who attacks a statute on constitutional grounds should bring up the heavy artillery or forego the attack entirely. *Southern Valley Grain Dealers v. Bd. of Cty. Comm'rs*, 257 N.W.2d 425 (N.D.1977).

VANDE WALLE, C.J., NEUMANN and MARING, JJ., and RALPH J. ERICKSTAD, Surrogate Judge.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.